## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| **MICHAEL DAVID HINTON** | **CIVIL ACTION NO. 22-2085** |
| | |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE ELIZABETH E. FOOTE** |
| | |
| **BOSSIER PARISH POLICE JURY, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Plaintiff Michael David Hinton, a prisoner at Bossier Maximum Security Center proceeding pro se and in forma pauperis, filed this proceeding on approximately July 13, 2022, under 42 U.S.C. § 1983.[1]  He names the following defendants: Bossier Parish Police Jury ("BPPJ") and Sheriff Julian Whittington.[2]  For reasons below, the Court should dismiss Plaintiff's claims.

### Background

On June 26, 2022, Plaintiff informed a deputy that he needed medical attention for his "low blood sugar issues arising from [his] known diabetic issues."  [doc. # 1, p. 3].  "After morning medication," he felt dizzy and lightheaded, saw spots, and was fatigued.  *Id.*  He claims that although the deputy informed "medical[,]" "no one came to check on" him.  *Id.*  Plaintiff claims that defendants did not implement "proper policy and procedure[.]"  [doc. # 14, p. 1].

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

[2] In an amended pleading, Plaintiff voluntarily dismissed his claims against "all inmate trustee kitchen workers," Head Chef Mike Cooper, and Nurse April.  [doc. # 14, p. 1].  He also dismissed his claim that on June 29, he was served a regular lunch instead of his usual, required diabetic lunch.  *Id.*

On July 23, 2022, after Plaintiff filed this proceeding, he endured another "low blood sugar event[.]" [doc. # 14, p. 2]. He suffered "undue distress and alarm because his glucobride prescription [was] administered as a therapy (once-a-day) instead of as needed." *Id.* He alleges that he was not "attended to" and that someone told him, "medical knows." *Id.* He faults BPPJ, claiming that there was a "lack of emergency care and preparation in keeping with required care of inmates . . . ." *Id.* He also faults Sheriff Whittington for the following: "Lack of assistance when health emergency arose with no proper means of making a 'kite' because kiosk unavailable or outright down, tablets not available, and paper kites seen next day maybe. This left me with NO recourse for an emergency situation. [sic]." *Id.* He claims that he had no "means to attain help . . . ." *Id.* at 4. Plaintiff states that only fellow inmates responded to his life-threatening event and that "all it took was a cookie or two to stabilize him." *Id.*

On July 2, 2022, Plaintiff "incurred a hand injury (possible fracture)[.]" [doc. # 1, p. 3]. He claims: "[W]hen I was seen [I] was not examined or given care but was only sold some Ibuprofen pills (20) and charged $15 for the trouble." *Id.* Like above, Plaintiff claims that defendants did not implement "proper policy and procedure[.]" [doc. # 14, p. 1]. He was dismissed and "unprofessionally handled . . . ." *Id.* at 2. He writes: "lack of x-ray or being seen at a local E.R. [sic]." *Id.* He also faults BPPJ for failing to be prepared to address his fractured hand, failing to send him to an emergency room for an x-ray, and only providing pills. *Id.* at 3.

Plaintiff claims that on July 6, 2022, he was "'locked down' for not taking a Covid test[.]" [doc. # 1, p. 3]. He was in lockdown for five days. [doc. # 14, p. 3]. He later declined a Covid test again, and he was placed in lockdown again for five days. *Id.* at 4. In lockdown, he received recreation for thirty minutes to one hour, and he could access telephones and a television. *Id.* He states that there was "no kiosk or tablet reasonably available[,]" and it was

"very hard to make issues known per procedure." *Id.* He alleges that forcing him to submit to a Covid test violated Governor Edwards' "orders to rescind all Covid restrictions including inmate tests." [doc. # 1, p. 3]. He faults Sheriff Whittington. [doc. # 14, p. 2].

Plaintiff faults BPPJ for installing cameras near showers that expose him and "amount to video voyeurism" because "no less than six (6) people could look in without a benefit of a shower curtain for privacy and could record the event by private devices[.] [sic]." [doc. # 14, pp. 2, 4].

Plaintiff faults BPPJ for performing only "token spraying" instead of addressing "the issues of flying insects (gnats, shower moths, flies, etc.) and invading mice that have appeared on 3 occasions . . . where [Plaintiff] resides and has no protection . . . ." *Id.* at 2.

Plaintiff seeks: (1) a "policy change to confirm delivery/care"; (2) "at least a cursory health and well-being check for the $10 charge on ANY health check"; (3) re-training for medical and kitchen staff; (4) disciplinary action for defendants; and (5) an order to Sheriff Whittington to "require signature confirmation for every diabetic in care to confirm on duty staff for trustee/kitchen/deputy/nurse. [sic]." [doc. # 1, p. 4].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3] *See Martin v. Scott,* 156 F.3d

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra.*

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Medical Care**

On June 26, 2022, Plaintiff informed a deputy that he needed medical attention for his "low blood sugar issues arising from [his] known diabetic issues." [doc. # 1, p. 3]. "After morning medication," he felt dizzy and lightheaded, saw spots, and was fatigued. *Id*. He claims

5

that although the deputy informed "medical[,]" "no one came to check on" him. *Id.* Plaintiff claims that defendants did not implement "proper policy and procedure[.]" [doc. # 14, p. 1].

On July 23, 2022, Plaintiff he endured another "low blood sugar event[.]" [doc. # 14, p. 2]. He suffered "undue distress and alarm because his glucobride prescription [was] administered as a therapy (once-a-day) instead of as needed." *Id.* He alleges that he was not "attended to" and that someone told him, "medical knows." *Id.* He faults BPPJ, claiming that there was a "lack of emergency care and preparation in keeping with required care of inmates . . . ." *Id.* Plaintiff also faults Sheriff Whittington for the following: "Lack of assistance when health emergency arose with no proper means of making a 'kite' because kiosk unavailable or outright down, tablets not available, and paper kites seen next day maybe. This left me with NO recourse for an emergency situation. [sic]." *Id.* He claims that he had no "means to attain help . . . ." *Id.* at 4. He states that only fellow inmates responded to his life-threatening event and that "all it took was a cookie or two to stabilize him." *Id.*

On July 2, 2022, Plaintiff "incurred a hand injury (possible fracture)[.]" [doc. # 1, p. 3]. He claims: "[W]hen I was seen [I] was not examined or given care but was only sold some Ibuprofen pills (20) and charged $15 for the trouble." *Id.* Like above, Plaintiff claims that defendants did not implement "proper policy and procedure[.]" [doc. # 14, p. 1]. He was dismissed and "unprofessionally handled . . . ." *Id.* at 2. He writes: "lack of x-ray or being seen at a local E.R. [sic]." *Id.* He also faults BPPJ for failing to be prepared to address his fractured hand, failing to send him to an emergency room for an x-ray, and only providing pills. *Id.* at 3.

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.

6

1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (*quoting Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Here Plaintiff does not plausibly allege that Sheriff Whittington affirmatively participated in any of the above acts or omissions or that there was a sufficient causal connection between Whittington's conduct and any alleged constitutional violation.[4] Instead, Plaintiff essentially pleads only vicarious liability, blaming Whittington for each disparate action or omission by various unnamed personnel. *See Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1987) ("[M]isconduct of Sheriff Belt's employees cannot be imputed to the sheriff individually . . . ."); *Sanchez v. Moore*, 2021 WL 5913305, at *1 (5th Cir. Dec. 14, 2021) ("His conclusory assertions that Sifuentes was liable in his role as a supervisor because he did not get involved with the law library policies or the issuance of a medical pass do not establish an affirmative participation in the denial of his rights or the implementation of unconstitutional policies by Sifuentes.").

Plaintiff primarily claims that Whittington and BPPJ failed to implement policy. For claims of failure to promulgate policy or failure to train, a "plaintiff ordinarily must show [a]

---

[4] *See Dedrick v. Richards*, 47 F.3d 425 (5th Cir. 1995) ("An official who is sued in her individual capacity cannot be liable under § 1983 on the theory of *respondeat superior;* to be liable she must have been personally involved in the plaintiff's injury."); *Salcido v. Univ. of S. Mississippi*, 557 F. App'x 289, 292 (5th Cir. 2014) ("To make out a § 1983 claim against the Defendants in their individual capacities, Salcido must show that they were either personally involved in the constitutional violations alleged or that their wrongful actions were causally connected to the constitutional deprivation.").

7

pattern of similar constitutional violations, because without notice of prior constitutional violations, a supervisor can hardly be said to have acted deliberately indifferent." *Grant v. LeBlanc*, 2022 WL 301546, at *5 (5th Cir. Feb. 1, 2022). The pattern requires "similarity and specificity; '[p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (*quoting Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 383 (5th Cir. 2005)). "A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Id.* (*quoting McConney v. City of Houston,* 863 F.2d 1180, 1184 (5th Cir. 1989)). For conduct to be sufficiently widespread, it must have "occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984), *on reh'g,* 739 F.2d 993 (5th Cir. 1984).

      Here, Plaintiff makes no attempt to allege a pattern of similar actions or omissions. Rather, he alleges only lapses or delays in *his* medical care. *See Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020) (finding no custom where "the complaint's only specific facts appear in the section laying out the events that gave rise to this action."); *Brown v. Tarrant Cnty., Texas*, 985 F.3d 489, 498 (5th Cir. 2021) ("Brown identified only one instance of the county's confining a committee without treatment—his own—but [i]solated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability.") *Clyce v. Hunt Cty., Tex.*, 515 F. App'x 319, 325 (5th Cir. 2013) (county did not have a policy or custom of delaying medical care, where the plaintiffs offered evidence relating only to the detainee); *Cardenas v. Lee Cty., Tex.*, 569 F. App'x 252, 256 (5th Cir. 2014) ("That [two prisoners] received [medical care] either too early or too late

8

may indicate, as the district court suggested, a failure in judgment by the prison officials. These two isolated failures in judgment cannot, however, establish a custom or policy of denying medical care to inmates.").[5]

Plaintiff also does not allege that Whittington or BPPJ implemented an explicit policy that deprived him of constitutionally adequate medical care. *See Alderson*, 848 F.3d at 421. Accordingly, the Court should dismiss the claims above against Whittington and BPPJ.

**3. Lockdown for Refusing a Covid Test**

Plaintiff claims that on July 6, 2022, he was "'locked down' for not taking a Covid test[.]" [doc. # 1, p. 3]. He was in lockdown for five days. [doc. # 14, p. 3]. He declined a Covid test again, and he was placed in lockdown again for five days. *Id.* at 4. In lockdown, he received recreation for thirty minutes to one hour, and he could access telephones and a television. *Id.* He states that there was "no kiosk or tablet reasonably available[,]" and it was "very hard to make issues known per procedure." *Id.* He suggests that forcing him to submit to a test violated Governor Edwards' "orders to rescind all Covid restrictions including inmate tests." [doc. # 1, p. 3]. Plaintiff faults Sheriff Whittington. [doc. # 14, p. 2].

Plaintiff's punishment (lockdown) does not implicate a protected property or liberty interest; thus, he does not state a plausible procedural due process claim. *See Carter v. Brown*, 772 F. App'x 67, 68 (5th Cir. 2019) (finding, where the plaintiff argued "that he was falsely charged and convicted at a hearing that violated established procedures, [and] relied on false

---

[5] *See also Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838 (5th Cir. 2009) (twenty-seven complaints of excessive force against city police officers over a four-year period did not suggest a pattern so common and well-settled as to constitute a custom that fairly represented an official policy); *Clark v. Thompson*, 850 F. App'x 203, 207 (5th Cir. 2021) ("'I was treated unprofessionally' plus 'eighty-two generic complaints' does not equal facts that plausibly show a single comparable incident that would support an inference of a specific custom of violating constitutional rights.").

evidence," that the plaintiff did not allege "a due process violation" because his punishment did not "implicate a protected liberty interest[.]").

"'Inmates have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (*quoting Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)). "'[A]bsent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for a constitutional claim' because it 'simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (*quoting Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996)); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) ("[A]dministrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest."). "In other words, segregated confinement is not grounds for a due process claim unless it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hernandez v. Velasquez*, 522 F.3d 556, 562-63 (5th Cir. 2008) (*quoting Sandin v. Conner*, 515 U.S. 472, 484 (1995)).[6]

Here, the Court must determine whether Plaintiff's time in lockdown constituted an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life, such that a liberty interest in avoiding the deprivation arises." *Wilkerson*, 774 F.3d at 853 (internal quotation marks and quoted source omitted). "In deciding whether changes to an inmate's conditions of confinement implicate a cognizable liberty interest, both *Sandin* and [*Wilkinson*] considered the *nature* of the more-restrictive confinement and its *duration* in relation to prison

---

[6] "Extraordinary circumstances" and "without more" are simply "alternative statements of the *Sandin* test: administrative segregation 'without more' or 'absent extraordinary circumstances' is administrative segregation that is merely incident to ordinary prison life, and is not an 'atypical and significant hardship' under *Sandin*." *Wilkerson v. Goodwin*, 774 F.3d 845, 853 (5th Cir. 2014).

10

norms and to the terms of the individual's sentence." *Id.* (emphasis added). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (*cited with approval by Wilkerson*, 774 F.3d at 854). "In essence, courts employ a sliding scale, taking into account how bad the conditions are and how long they last." *Bailey v. Fisher*, 647 F. App'x 472, 476 (5th Cir. 2016). "On such a sliding scale, truly onerous conditions for a brief period of time may not be atypical; less onerous conditions for an extended period of time may be." *Id.*

With all of that said, however, the Fifth Circuit has "suggested that two and a half years of segregation is a threshold of sorts for atypicality, such that 18-19 months of segregation under even the most isolated of conditions may not implicate a liberty interest." *Id.* (*citing Wilkerson*, 774 F.3d at 855).

Here, Plaintiff claims that he was in lockdown for ten days. Even "under the most isolated of conditions," this period was not excessive in degree. *See Bailey*, 647 Fed. App'x at 476.

As Plaintiff presents no extraordinary circumstances and alleges no atypical or significant hardships, he does not state a plausible denial-of-procedural-due-process claim.[7]

---

[7] *See Bailey*, 647 Fed. App'x at 476 (finding that if the prisoner was confined less than approximately nineteen months in segregation, he would not state a claim even considering that he was in lockdown 23-24 hours each day, that he lacked visitation, that he lacked contact with other prisoners, that he could not attend religious gatherings or educational/vocational programs, that he lacked entertainment and "canteen," that he could rarely use the telephone, and that he could only shower three times per week); *see also Palmer v. Cain*, 350 F. App'x 956, 957 (5th Cir. 2009) (finding that due process was not required because the appellant's 97 days in administrative segregation were not sufficiently atypical or significant); *Lewis v. Dretke*, 54 F. App'x 795 (5th Cir. 2002) (finding no claim where the prisoner "received 30 days' cell and

Moreover, that a defendant violated a state governor's executive order does not, absent more, establish a constitutional violation. *See Lodge v. LeBlanc*, 799 F. App'x 304 (5th Cir. 2020) ("His allegation that the handling of the disciplinary action violated state and prison regulations likewise does not give rise to a constitutional violation under § 1983[.]") (*citing Levitt v. Univ. of Texas at El Paso*, 759 F.2d 1224, 1230 (5th Cir. 1985) (noting that unless conduct "trespasses on federal constitutional safeguards, there is no constitutional deprivation" for a violation of state law).

The Court should dismiss this claim.

### 4. Conditions of Confinement

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (*quoting Farmer v. Brennan*, 511 U.S. 825 (1994)). To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of "the minimal civilized measure of life's necessities."[8] *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). To establish

---

commissary restriction (including loss of recreation and library privileges, as well as the ability to attend religious services), 90 days' loss of telephone privileges, 15 days of solitary confinement, a reduction from trustee class 4 to line class 1, and an increase of his custody level from minimum to medium."); *Perry v. Allemand*, 687 F. App'x 352, 353 (5th Cir. 2017) (finding no claim where the prisoner was housed in a special tier for six months without visitation privileges).

[8] The deprivation alleged must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving

deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference. *Farmer*, 511 U.S. at 837.

"*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted source omitted).[9] However, "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

**A. Privacy**

Plaintiff faults BPPJ for installing cameras near showers that expose him and "amount to video voyeurism" because "no less than six (6) people could look in without a benefit of a shower curtain for privacy and could record the event by private devices[.] [sic]." [doc. # 14, pp. 2, 4].

---

standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

[9] "Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement." *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (citing cases).

To the extent Plaintiff alleges that these conditions violated the Eighth Amendment, he does not allege a plausible claim.[10] The alleged conditions do not reflect an extreme deprivation of any minimal civilized measure of life's necessities.[11]

With respect to the lack of privacy, the Eighth Amendment does not afford protection against conditions of confinement which cause mere discomfort or inconvenience. *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Moreover, "Loss of freedom of choice and privacy are inherent incidents of confinement . . . ." *Bell v. Wolfish*, 441 U.S. 520, 537 (1979).[12] The Court should dismiss this ostensible Eighth Amendment claim.

**B. Pest Control**

Plaintiff faults BPPJ for performing only "token spraying" instead of addressing "the issues of flying insects (gnats, shower moths, flies, etc.) and invading mice that have appeared on 3 occasions . . . where [Plaintiff] resides and has no protection . . . ."

Plaintiff, however, does not plausibly allege that the presence of insects or mice amounted to an extreme deprivation of an identifiable human need. He states that the insects and mice appeared on three occasions, but he does not elaborate on, for example, how long they were

---

[10] Below, the undersigned addresses the Fourth and Fourteenth Amendments.

[11] *See Ordaz v. Martin*, 5 F.3d 529 (5th Cir. 1993); *Oliver v. Scott*, 276 F.3d 736, 743 (5th Cir. 2002) (noting that the plaintiff was wise to forego arguing that cross-sex searches and monitoring violate the Eighth Amendment given the Fifth Circuit's refusal to extend the Eight Amendment to strip searches).

[12] *See* also *Hudson v. Palmer*, 468 U.S. 517, 528 (1984) ("We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security.").

near him, how they affected him, how many were present, or where they were. *See Dunlap v. City of Tupelo, Miss.*, 103 F.3d 124 (5th Cir. 1996) (agreeing with the district court that the plaintiff did not experience extreme deprivation of life's necessities where the plaintiff alleged that his cell was "'infested' with cockroaches, that the only working water spout provided only hot water, [that] the toilet facilities were 'stopped up' and foul smelling[,]" that he was denied showers, and that he had to sleep on a wooden bench).[13] Further, that defendants made some attempt to prevent or eradicate the pests by spraying pesticide does not reflect deliberate indifference, which is an extremely high standard to meet. The Court should dismiss this claim.

## 5. Lack of Privacy

To reiterate, Plaintiff faults BPPJ for installing cameras near showers.

"Prisoners retain, at best, a very minimal Fourth Amendment interest in privacy after incarceration." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002). Prisoners also retain a "minimal, at best," right to bodily privacy under the Fourteenth Amendment. *Id.* at 745. "But, even if a prison regulation 'impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Garrett v. Thaler*, 560 F. App'x 375, 380 (5th Cir. 2014) (*quoting Turner v. Safley*, 482 U.S. 78, 89 (1987)).

---

[13] *See also Smith v. Dart*, 803 F.3d 304, 312-13 (7th Cir. 2015) ("[A]lleging the mere presence of a laundry list of pests, without more, is not sufficient to state a constitutional claim. Despite Smith's additional allegations, we are left in the dark as to how extensive the infestations are and how the pests affect him. He does not allege that pests are present in his cell, or that pests have ever come into contact with his person or his property, or that he's been bitten or stung or otherwise suffered physical or psychological harm, or that his property has been damaged. Nor does he allege how often he observes rodents and roaches on the tier, whether it's continuously or only from time to time. On all of these matters we are left to speculate."); *Bush v. Monroe*, 2018 WL 4648732, at *3 (E.D. Tex. July 30, 2018), *report and recommendation adopted,* 2018 WL 4042418 (E.D. Tex. Aug. 24, 2018) ("While living in a leaky cell with insects, broken doors, and rust may be undesirable and uncomfortable, such circumstances do not rise to the level of a constitutional violation—especially because Bush failed to show that he was personally involved or harmed by such conditions.").

Affirming the dismissal of a plaintiff's claim that "video recording cameras in the restrooms, showers, and dressing areas of the prison—as well as female officers' viewing of male inmates both in those areas and on the cameras—violate[d] [the plaintiff's] expectation of minimal privacy under the Fourth Amendment[,]" the Fifth Circuit explained:

> [W]e rejected in *Oliver* a similar challenge on the grounds that "constant surveillance, even cross-sex surveillance, of prisoners is constitutional because it is reasonably related to the penological interest of maintaining security." *Oliver*, 276 F.3d at 745-46. The court found that, as here, comprehensive surveillance by all guards increases the overall security of the prison, minimizing inmate-on-inmate violence and sexual assaults. *Id.* at 746. Moreover, requiring only male guards to supervise inmates or doing away with security cameras in the bathroom and dressing areas could require the prison to increase staffing or reassign a large percentage of its staff, or both, and there is no readily identifiable alternative that would impose only *de minimis* expenses in terms of inmate security, staffing costs, or equal employment opportunities. *Id.* We have subsequently affirmed this position. See, e.g., *Mitchell v. Quarterman*, 515 Fed. Appx. 244, 247 (5th Cir. 2012) (unpublished)[.]

*Id.* at 380-81.[14]

Here, the lack of privacy manifestly originates from measures designed to enhance the legitimate penological interests of safety and security. Plaintiff's allegations do not amount to a plausible constitutional violation under either the Fourth or Fourteenth Amendments.[15] Accordingly, the Court should dismiss this claim.

---

[14] Of note, the Fifth Circuit affirmed dismissal even though the defendants did not offer a legitimate governmental or penological interest. *Id.; see also Ordaz*, 5 F.3d at 529; *Bryant v. Strong*, 2013 WL 504893, at *3 (S.D. Tex. Feb. 7, 2013) ("Prison policies and practices allowing male inmates to be strip searched in the presence of female officers are widely-utilized throughout state and federal prison systems, and the courts have generally recognized their constitutionality under the penumbra of 'legitimate penological interests.'"); *Patin v. LeBlanc*, 2012 WL 3109402, at *20 (E.D. La. May 18, 2012), report and recommendation adopted, 2012 WL 3109398 (E.D. La. July 31, 2012).

[15] *See Petty v. Johnson*, 193 F.3d 518 (5th Cir. 1999) ("The presence of female prison guards for security reasons on those occasions when male prisoners are naked is not a constitutional violation."); *Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir. 1992) (holding that the use of female guards in guard towers giving a full view of male inmates taking showers is not

**Recommendation**

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Michael David Hinton's claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

---

unconstitutional); *Ordaz*, 5 F.3d at 529 (dismissing, under the Fourth Amendment, a claim that female officers viewed the plaintiff masturbating and reasoning: "a prisoner has no reasonable expectation of privacy in the 'curtilage' surrounding his prison cell. Consequently, the female guards' observations from this vantage point could not have constituted a search within the meaning of the Fourth Amendment."); *Guy v. Tanner*, 2012 WL 1565425, at *3 (E.D. La. Mar. 20, 2012), report and recommendation adopted, 2012 WL 1565421 (E.D. La. May 2, 2012); *Warren v. Gusman*, 2017 WL 1373875, at *7 (E.D. La. Mar. 10, 2017), report and recommendation adopted, 2017 WL 1355709 (E.D. La. Apr. 13, 2017); *Clayborne v. Beasley*, 2009 WL 929305, at *2 (S.D. Miss. Apr. 2, 2009); *Hmeid v. Nelson Coleman Corr. Ctr.*, 2018 WL 4922381, at *14 (E.D. La. Aug. 15, 2018), report and recommendation adopted, 2018 WL 4909898 (E.D. La. Oct. 10, 2018) (dismissing a claim that a plaintiff's "privacy rights were violated because there was no partition wall between the shower and toilet areas of the Coleman dorm, and that the guards constantly watched the inmates in those areas from an observation pod.").

In Chambers, Monroe, Louisiana, this 21st day of December, 2022.

_____
Kayla Dye McClusky
United States Magistrate Judge